PAGE, *Appellant*, v. SHELBY *et al.*

DIVISION ONE.

1. **Possession**: POLICY OF THE LAW. The policy of the law is to uphold possessions that have continued peaceably for a long time.

2. ———: ———: EQUITY: DECREE OF TITLE. Where the evidence tends to prove that plaintiff and his grantors have been in possession of land for more than thirty years; that his grantor bought the land, paid the purchase money therefor, and received a deed which was not recorded and had been lost, every presumption will be indulged in favor of this theory, in the absence of any evidence tending to weaken it, and a court of equity will, in such case, decree the title in the plaintiff.

*Appeal from Bates Circuit Court.*—HON. D. A. DEARMOND, Judge.

·· REVERSED AND REMANDED.

*Page & Denton* for appellant.

Where a conveyance of land, executed and delivered, but not recorded, has been lost, a court of equity will protect the rights of the grantee by divesting the heirs or representatives of the grantor of any apparent title they may have, and establish the title of the grantee and his assigns therein. *Wright's Heirs v. Christy's Heirs*, 39 Mo. 125; *Wynn v. Cory*, 43 Mo. 301; *Mason v. Black*, 87 Mo. 229.

*Francisco Bros.* and *W. G. Rose* for respondents.

(1) Plaintiff proves his whole case by one witness, whose testimony is not credible. (2) Plaintiff does not prove the *tenendum* or *habendum*, or any of the ·orderly parts of a deed, either in form or in substance. (3) Plaintiff does not show by any evidence that the

supposed writing had any seal. (4) There is no proof whatever that the signature to the supposed deed was genuine. (5) Plaintiff and his grantors have been guilty of the most manifest laches. (6) There is no proof of any search for the deed in the places where it would be apt to be found. 1 Story's Equity [5 Ed.] sec. 88, p. 105.

BRACE, J.—This is a suit in equity against the heirs-at-law of William Shelby, deceased, instituted in June, 1889, seeking to establish plaintiff's title to forty acres of land in Bates county, alleged to have been conveyed by deed in the year 1857, by said Shelby to Enoch Bolling, which deed was lost or destroyed without ever having been recorded. On the hearing the plaintiff's bill was dismissed, and he appeals.

It was admitted that Shelby entered the land and received a patent therefor, and that plaintiff had acquired Bolling's title by good and sufficient deeds, and it is conceded that he is entitled to the relief prayed for, if the evidence is sufficient, and that is the only question in the case.

The plaintiff, to sustain the issue on his part, introduced the deposition of James W. Bolling, who testified that he lived in Kansas, was fifty-six years old, a son of Enoch Bolling, and that his father died in Bates county, Missouri, in 1860. Then, after giving the names of his father's children, the witness proceeded as follows : " I know of my father, Enoch Bolling, buying forty acres of land in Bates county, Missouri, of William Shelby. The land was the northwest quarter of the northwest quarter of section 23, in township 42, of range 32. My father had eight or ten acres of it fenced when Mr. Shelby entered it. He went to see Mr. Shelby, and he told my father he could have it at government price, just what it cost Mr. Shelby, $1.25 per acre. My father paid him $50, and a short time afterwards Mr. Shelby made out the deed and sent it to him by Mr.

Parker. I was present when he bought the land and saw the money paid for it. I do not know what has become of the deed."

Cross-examination: "*Q.* What did the signature to the deed, purporting to be from William Shelby, look like? Describe it. *A.* It was his name signed to the deed in common writing. As near as I can remember, nothing peculiar about it.

"*Q.* Before whom was the deed acknowledged? *A.* I have forgotten.

"*Q.* Was it signed by William Shelby's wife, and was her dower relinquished? *A.* I don't recollect. I knew at the time, but have forgotten.

"*Q.* About what was the date of the deed? *A.* About the year 1856 or 1857. Can't remember exactly.

"*Q.* Do you mean to say that after all these years you remember the numbers of the land contained in the deed from Mr. Shelby to your father? *A.* Yes, sir.

"*Q.* Is it not a fact that your memory has been refreshed as to the numbers of the land since bringing this suit, and is it not a fact that you may be entirely mistaken as to the description of the land? *A.* I am not mistaken. In regard to the refreshing of my memory, I received a letter from Mr. Page about this action. I know the numbers of the forty acres and the numbers of all the other lands my father owned in Bates county, Missouri."

Redirect examination: "*Q.* What direction did this forty acres lie from the forty acres upon which the house was located? *A.* The southeast corner of the Shelby forty acres would be the northwest corner of the forty acres on which father's house was located, and the corner was a short distance from the well."

The plaintiff, William Page, was sworn, and testified as follows: "I have resided in Bates county about twenty-four years, and have owned a farm about two miles beyond the land in dispute some eighteen or twenty years, and have been accustomed to pass the

and in dispute frequently during that time, and I know of Enoch Bolling's heirs and those claiming under him being in possession of said land since that time. I was attorney for the Bolling heirs before they disposed of the land. I have hunted for the deed from Mr. Shelby to Enoch Bolling, and I have been unable to get track of it." This was all the evidence, the defendant offering none.

The evidence tends to prove that the plaintiff and his grantors have been in possession of the premises for more than thirty years. That Bolling bought the land and paid the purchase money and received a deed therefor from Shelby, is satisfactorily shown. There is nothing in the evidence tending to impeach the integrity of the witnesses or the accuracy of their recollection as to the facts to which they testified.

The policy of the law is to uphold possessions that have continued peaceably for a long time. The possession and the other facts proven in this case are consistent with the theory that a good and sufficient deed was executed by Shelby to Bolling. Every reasonable presumption should be indulged in support of this theory, in the absence of any evidence tending to weaken it. We have as fair an opportunity of weighing this testimony as did the court below, and we think the plaintiff was entitled to his decree.

The judgment, therefore, will be reversed, and the cause remanded with directions that a decree be entered in plaintiff's favor, as prayed for. All concur.